I know my time is limited, so I'd like to briefly begin by reiterating to this court, the appellee, the Department of the Navy, relies heavily on Long v. Potter, and I want to distinguish that case in that there was a case of discrimination, disability discrimination, and the wrong box was checked. Then they attempted to sue on a different cause of action based on a different form of discrimination. That's not the case here. The case here is Ms. Hungate consistently at every stage of her complaint, including the formal one, discussed her instruction from her supervisor to speak English only. Counsel, I'm concerned, and speaking of course only for myself, about the timing issue here. It seemed to me that the last discrimination date was in May and that Ms. Hungate did not speak to an EEO counselor within 45 days of that date. And if that is the case, then all the complaints, including that one, would be untimely. What's your response to that? Well, my response to that is we contend that the last act of discrimination was, in fact, her termination, was in or about August 2004. It was eight days later that she contacted someone to discuss her rights. She contacted an EEO counselor. Now, granted, you could look at the papers. She did not necessarily allege that her termination was an act of discrimination. She didn't necessarily. She didn't, right? Correct. Okay. That's correct. So if, in fact, we were to disagree with you about the final date from which to measure that 45 days, would that affect both of your claims, both the language discrimination claim and the disability claim? Well, the disability claim, she did actually check the box. Oh, no. I'm asking a different question, though. Assuming we agree with you that both claims were raised to the EEOC and they're before us, would the timing question affect both equally? Correct. So if we were to find that the disability claim were untimely, the language discrimination claim also would be untimely? I would say that's true, Your Honor. Okay. And I'd also like to add as well that this is a person who was not born in this country. This is someone who lacks a sophistication, maybe of someone who has a sophistication of a layperson, who does have a heavy accent, who is not well versed in what she's supposed to do, in the procedures and policies set up by the Navy. I'd like to at least just reinforce the fact that at every stage she did make complaints about not only being instructed to speak English only, but she also did check the box for physical disability. And if you go through the record of each and every one of her complaints, she's very consistent. Okay. Her only claim based on racial or national origin discrimination is based on being told to speak English? That's correct. That's correct, Your Honor, that she was instructed. How would that be like or reasonably related to the disability claim where she checked it? Is that your theory? Well, my theory is that although that box was not physically checked in all the attachments and in her interview with the EEO counselor, she did mention this fact. So she went to the counselor and gave them the information, okay? And it's our position, that's the counselor's duty, to take the raw data from an unsophisticated layperson and put that into a framework that acknowledges that perhaps some discriminatory action had taken place. Why is it somebody should identify a single episode when a person is asked to speak English? Why should that be taken to establish a claim for racial discrimination? Well, Your Honor, being instructed to speak English only implies that any other language, therefore being from another country and speaking another language, is somehow inferior or found? Not inferior. Just the supervisor wants to be able to understand what's being said. I mean, in the context of an ongoing complaint where she has several times identified the problem that she sees as one of disability, I have difficulty with the inference you say the counselor should have drawn based on a single episode, which turned on language, not on race or natural origin. It's not like somebody cursed at her with regard to her ancestry. It's speak English in this office. So you're saying the counselor should have inferred from that complaint that this wasn't simply a disability discrimination claim. I'm not sure what the basis for that inference is supposed to be, and that's really why I'm raising the question with you. Well, I guess it would be our position that she should at least be allowed to argue that, and by having her claims summarily dismissed on this motion. Well, if the theory is that you have to exhaust your claim and you put the claim to the counselor in such a fashion as the counselor doesn't recognize it to be a race claim as opposed to a disability claim, and that's the basis I understand it for the dismissal of the race and natural origin claim. Well, how can it be said that claim has properly been exhausted with the agency when it really wasn't put to the agency in anything resembling a very clear manner? Well, my only response to that, Your Honor, is that she did indeed inform the counselor of her reprimand to speak English only, and just because simply one box wasn't checked through no fault of her own is quite a draconian measure to dismiss that part of the claim. Do you want to save for the rest of your time? Sure, unless any of Your Honors had further questions for me. I don't see any at the moment. Thank you. Thank you. You may begin, Your Honor. May it please the Court in good morning. My name is Megan Callan. I represent the Secretary of the Navy, Donald Winter. Your Honors, this case may be boiled down to a single issue, and that is timeliness under 29 CFR 1614.105A1. Although two issues are raised on appeal, the Navy did raise timeliness as to both of Ms. Hungate's claims before the district court, and this Court may affirm on any basis. The fact that Ms. Hungate's, all of Ms. Hungate's claims are untimely under this controlling regulation is fatal to all of her claims, and therefore I say that this single issue resolves all of the claims before the Court. First of all, with regard to timeliness, Ms. Hungate's own admission, which is in the excerpt records at 15, indicates that her first EEO contact was not until November 19th. I would note for the Court that she then in a parenthetical states, I faxed to headquarters on September 27th this charge. Certainly with respect to November 19th, her termination on August 8th, which is undisputed, is untimely. Also, however, even if the Court were to give her the benefit of the parenthetical date, the September 27th date, that is also untimely. Forty-five days after her undisputed termination on August 8th, 2004, is September 22nd, 2004. There's something in the record, though, that says that the counselor who, I guess it is conceded, that she spoke with gave her that date, September 27th, as the date to file an EEOC complaint. Your Honor, let me clarify. I believe that Your Honor is asking about the letter from Ms. Seal-Clemen to Ms. Hungate. And that letter, which is found at excerpt record page number two, is actually not from an EEO counselor. What occurred is that, from the record, is that Ms. Hungate did not contact an EEO counselor. She instead made a call to the Inspector General's office, which would, as a matter of course, be insufficient to initiate EEO counseling. In response to that telephone call, it appears that no live contact was made on that day. In response to the telephone call, Ms. Clemen returned Ms. Hungate's call on August 16th, and some conversation took place. Ms. Clemen then recorded or memorialized the contents of that telephone conversation in a letter dated August 19th. And that is the letter that's found at page two of the record excerpts. I appreciate your reference to that, and that is the letter that specifies that she has until September 27th. Your Honor, Ms. Clemen notes there that her statement to Ms. Hungate that she had until September 27th was based upon the belief that Ms. Hungate was at the workplace until August 8th. And Ms. Clemen notes there several important factors that support an untimeliness finding here. First of all, Ms. Clemen notes there was no active EEO-initiated contact at that time, and that in their telephone conversation, Ms. Hungate stated that she did not desire to initiate EEO contact. Further, Ms. Clemen states in that letter that should Ms. Hungate wish to initiate EEO counseling, Ms. Clemen, although not an EEO counselor, offers to forward her request for contact to the appropriate official. So this letter is evidence in addition to Ms. Hungate's own admission in the formal charge that there was no contact as of this August 19th date, and that three days prior in the telephone conversation, Ms. Hungate had stated that she did not wish to initiate EEO. Well, you're not arguing that she's waived any possibility of proceeding, are you? No, Your Honor, but only that the issue of timeliness is framed by this letter. You've gone to the trouble of establishing you think the correct date is being September 22nd, and I'm continuing to stare at a letter that puts down a different date and having trouble figuring out why it is the government won't accept the date that its own representative set forth to the current plaintiff. Well, Your Honor, there is an additional level of trouble for Ms. Hungate, even if the Court were to accept that approach. Let's assume that a filing on September 27th were timely under the regulation. The problem is that Ms. Hungate never raised termination as the alleged act of occupation. I'm not sure why we're having this conversation about September because the plaintiff's letter also says it looks like your claims that had to do with things that occurred during your employment, harassment and so forth, ended in May. And if that's true, they'd be untimely regardless of all this conversation about September. I guess I don't understand why that isn't the focus of our decision. Your Honor, I agree, and that is the Navy's position as well. In fact, what the law applied to this record clearly reflects is that Ms. Hungate's charge, which is at page 14 and 15 of the record excerpts, in the bottom paragraph of page 14, she dates the last two alleged actions of discrimination as December 2003 and April 2004. Now, on the basis of that charge, there is no record that would support an inference that the termination is included. I made the termination argument only for the sake of completeness in response to appellant's arguments on the briefs. However, the Navy's position is that Ms. Hungate has only ever challenged as allegedly discriminatory the discrete and nondiscrete actions that necessarily ended when she was no longer in the workplace in May 2004. And therefore, any contact in August or September is certainly untimely under the regulation. Now, normally I would think that most people are charged with knowing the law, but it appears the authority that I was looking at indicated that if she was not aware of the requirement to seek EEO counseling within 45 days, that that would not run. And there's a case out of the Ninth Circuit, Leorna. Could you comment on that? Yes, Your Honor. In the briefs, the Navy did comment on Leorna, but I'll take this opportunity to add a bit more. To the extent that Your Honor raises the question of equitably extending the time for Ms. Hungate, she has two problems. One, she waived that argument by not raising it to the district court, and the Navy would be prejudiced by an application of it here because the Navy could have challenged those issues below. Ms. Hungate was represented by counsel at the time of the motion for summary judgment and could have filed a Motion 56F response requesting additional time or discovery in order to raise those issues, and she did not do so. But, Your Honor, also with respect to the liberal standard that is applied to those who may not be well versed in the law, as a general principle, I think the difficulty for Ms. Hungate here is that the record shows in the supplemental excerpts that many years prior, three years prior, there was an EEO contact made by Ms. Hungate to Mr. Donaldson. And the email simply states from Ms. Hungate, please make an EEO appointment for me, and the response email is, you have an EEO appointment with Mr. Donaldson on such and such date. Therefore, the record clearly displays that Ms. Hungate knows how to make an EEO contact and initiate an EEO investigation when she wishes to do so. Does it show that she knew she had to do this within 45 days? Your Honor, I don't think that that page of the record would support an inference that she knew of the 45-day deadline. But I do think that that page supports the inference that she knew that resting on your rights for three years would not suffice. And so to permit her to use the months and months that went by after she was no longer in the workplace with no contact is, I don't believe there's anything in the record that would support her lack of knowledge to that extent. What do you mean by months and months? From May 24th, Your Honor, until September. Excuse me, not May 24th, May 2004, when that is the end of the alleged acts of discrimination. Your Honors, I see that I only have one moment left. It is the Navy's position that this Court need not reach the question of subject matter jurisdiction because timeliness resolves all issues. But were there any questions from the bench regarding the dismissal under Rule 12b-1? I'd be happy to address those. I don't believe we have any. Thank you. If not, then the Navy respectfully requests that this Court affirm the District Court's dismissal of Ms. Hungate's Rehabilitation Act claims for untimeliness and also affirm judgment for the Navy on the Title VII claims for the same reason. Thank you. Mr. Zaleski, you have some rebuttal time remaining. Thank you. I'll just briefly address some of the comments made by opposing counsel. A couple things. Your Honors were right to talk about the September 27th date found in the Sill-Pleman letter. Equitable tolling in this matter is right to be considered. Counsel, you did not raise that issue at the District Court as I see it. Is that true? That is true, Your Honor. Okay. Well, ordinarily we view an issue not raised at the District Court as not properly before us, because we don't, we're reviewing what the District Court may or may not have done wrong, and if something wasn't presented to it, it had no opportunity to do it right or wrong. So why should we consider it? Well, I would direct your attention to page 6 of my appeal brief, or of my reply brief, where I discuss United States v. Patrine, which says, if the record is substantively complete, in other words, the universe is already closed, then it's something that may be considered by the appellate court. Except this is a factual issue. Whether somebody knew something or not, or had reason to know it, is a purely factual issue that would require development, or permit development at least, at the District Court. It's not just a question of law. So how does that fit into the case that you've cited? Well, Your Honor, all I can say, all I can respond to that is what the case stands for, and that I do think that a lot of the factual issues are not necessarily in doubt, and we're here because it's a question of law. Is there anything in the record that supports the proposition that she was not aware of the 45-day time limit? Except for, I believe her own declaration states that. And also the record is supported by the fact that she complied with the information that she was given. The September 27th date, she complied with that. Except that that letter also went on to say that her other claims may be untimely. It didn't promise her that September 27th was magic for all purposes, that she may have already been untimely, right? I mean, so. Yes, Your Honor. Again, all I can say is that this is someone who knew that she had been wrong in some way, or felt that there was some sort of, she was being punished, having deleterious effects on her employment because of some sort of discrimination, and so she was not being punished for answers. She complied with what they told her as best as she could. And that's really the crux of this case. If Your Honors have no further questions, then I would just ask that conclusion in my opening brief be upheld, and the decision of district court be overturned for both causes of action. Thank you, Your Honor. Thank you, Counsel. We appreciate the arguments of both parties. The case just argued is submitted. And we will next hear argument in Gibson and Good Parker v. Quinn. And whoever is starting is free to begin.
judges: Graber, Clifton, Reed